321 So.2d 655

**In re the MEAD CORPORATION**

v.

**CITY OF BIRMINGHAM, Alabama, et al.**

**Ex parte CITY OF BIRMINGHAM,**
a Municipal Corporation.

**SC 1211.**

Supreme Court of Alabama.

Oct. 2, 1975.

Rehearing Denied Nov. 26, 1975.

Johnson, North, Haskell & Slaughter and Frank M. Young, III, Birmingham, for petitioner.

Norman K. Brown, W. G. Stone, Fred A. Powell, Powell Lipscomb, Jack Harrison, Bessemer and Birmingham, for respondent.

**FAULKNER, Justice.**

The City of Birmingham filed a petition for writ of mandamus, praying that this court require Judge Pickens to transfer the cause to the Birmingham Division. We grant the writ.

On February 4, 1975, the City Council of Birmingham adopted a resolution of annexation of certain territory located outside the city limits. An election was ordered to be held on March 8, by the Probate Judge. Meanwhile, on February 17, Mead Corporation filed a complaint in the Bessemer Division of the Circuit Court challenging the legality of the election, and seeking a temporary restraining order, and a preliminary injunction. Judge Pickens issued a temporary restraining order. Subsequently Birmingham filed a motion to transfer the case to the Birmingham Division, alleging that the cause of action did not accrue or arise in the Bessemer Division, and therefore that division did not have jurisdiction. Judge Pickens overruled the motion. On appeal to this court, we suspended the temporary injunction that had held up the election. The election was held, as scheduled, and a majority of the qualified electors voted in favor of annexation. In accordance with our order, the results were not certified to the Judge of Probate.

After the election, Birmingham petitioned this court for a writ of mandamus, asking that Judge Pickens' order denying the motion to transfer, be set aside. We issued a rule nisi requiring the Judge to show cause why his order should not be set aside, and the case transferred to the Birmingham Division. Judge Pickens answered that the territory sought to be annexed was within the Bessemer Division; consequently, the action was properly brought there. On the other hand, Birmingham asserts that the action was improperly brought in the Bessemer Division because the cause of action did not *accrue* or *arise* within the territorial limits of that division and that the Bessemer Division has exclusive jurisdiction only over causes of action arising within it.

In *Ex parte Central of Georgia Ry. Co.,* 243 Ala. 508, 10 So.2d 746 (1942) this court said, ". . . the court at Bessemer has exclusive jurisdiction of all civil actions at law upon causes of action arising in the territorial jurisdiction of that court, and such jurisdiction is limited to suits upon causes of action arising within such territory." In *Ex parte Southern Building Code Congress,* 282 Ala. 523, 213 So.2d 365 (1968) this court re-emphasized that the venue approach had been abandoned, and adopted as a basis of jurisdiction in the Bessemer Division, the fact as to where the cause of action, or case, accrued or arose.

In this case we are of the opinion that the cause of action accrued or arose in the Birmingham Division. The subject matter of the suit does not involve title to land. On the contrary, the subject matter is an election having its situs in Birmingham. The Probate Judge ordered the election held in Birmingham, the ballots were canvassed in Birmingham, and the results were made known there. Thus, all of the facts giving rise to the suit occurred in Birmingham. The suit, therefore, should be heard in Birmingham, and the trial judge erred when he denied the motion to transfer.

The writ of mandamus is due to be awarded.

HEFLIN, C. J., and MERRILL, BLOODWORTH, MADDOX, ALMON and EMBRY, JJ., concur.

**16**

SHORES, J., concurs in the result.

JONES, J., dissents.

JONES, Justice (dissenting):

I disagree with the result and the rationale of the majority. The question presented by this Petition for Mandamus is controlled by the Bessemer Court Act of 1919 (Local Acts of 1919, p. 62), §§ 2 and 9½, which provides in pertinent part that all equity cases arising in the Bessemer Cut-Off may be brought either in Bessemer or Birmingham, and that no case at law or in equity is to be brought in Bessemer unless the case arose in the Bessemer Cut-Off. *Ex parte Central of Georgia Ry. Co.*, 243 Ala. 508, 10 So.2d 746 (1942). All of the territory sought to be annexed through the annexation election is situated in the Bessemer Cut-Off, and all of the people affected thereby live in the Bessemer Cut-Off. To hold—as the majority does—that, since the election was scheduled by the Probate Court to be held in Birmingham, the cause of action arose in Birmingham and not in the Bessemer Cut-Off is an adjudication of one of the principal issues raised in the complaint filed by Mead Corporation challenging the legality of the election.

The opinion states as a fact that "the subject matter is an *election* having its situs in Birmingham. The Probate Judge ordered the election held in Birmingham, the ballots were canvassed in Birmingham, and the results were made known there."

It seems to me that the entire factual basis for concluding that the cause of action (Mead's complaint contesting the election) did not arise in the Bessemer Cut-Off has been adjudicated adversely to Mead for the first time in this cause on appeal. The only issue properly before this Court is whether Mead's election contest suit is an action which accrued in the Bessemer Cut-Off and thus was properly filed there.

For this Court to adjudicate the merits of Mead's claim of contest can only have the effect of cutting the pattern to fit the cloth. By prejudging the merits of Mead's main action, the Court has found a factual basis for concluding that the cause of action accrued outside the territorial limits of the Bessemer Cut-Off. The fact that the election has already been held in Birmingham, in support of the conclusion that the cause of action accrued in Birmingham, constitutes some sort of reverse rationale to which I am judicially unaccustomed.

I have made no prejudgment as to the merits of Mead's contentions for contesting the election; but I have no difficulty in concluding that the legislative acts creating the Bessemer Cut-Off permit a suit to be filed and maintained in Bessemer which has as its gravamen the contest of an annexation election affecting solely the territory and people within the geographical confines of the Bessemer Cut-Off.