ROBERTSON, Presiding Judge.
This is an appeal from a declaratory judgment which determined, inter alia, that the Board of Control of the Employees’ Retirement System of Alabama (ERS) had misapplied the law governing reemployment of state retirees and that Johnny B. Nesmith’s performance of an employment contract with the City of Cullman (City) would not constitute a “return to active service” within the meaning of the applicable law.
ERS was established for the purpose of providing retirement benefits to state employees and employees of the state’s political subdivisions. See §§ 36-27-1 through -103, Code 1975. Membership in ERS is a mandatory condition of employment for persons first employed by the state after October 1, 1945, and for persons employed by cities, counties, or other governmental entities which elect to participate in ERS pursuant to § 36-27-6, Code 1975.
The record shows that Nesmith was employed by the State of Alabama as a state trooper from May 1964 until his retirement in June 1989, whereupon, as a member of ERS, he began to receive retirement benefits. In July or August of 1990, principals of the Cullman County Multi-Agency Drug Task Force (MADTF) contacted Nesmith with regard to offering him a one-year contract to work as an investigator with its drug unit, which was then in its organizational stage. MADTF was to be, and is, funded through a grant to the City from the Alabama Department of Economic and Community Affairs (ADECA).
Nesmith expressed interest in the investigator’s job, and, accordingly, an agreement between the City and Nesmith was drafted, stating that the City desired to engage Nes-mith “to render certain technical or professional services” in connection with MADTF. The terms of the contract provided for a total annual compensation of $25,000, payable in biweekly installments. Although the City participates in ERS pursuant to § 36-27-6, Code 1975, the contract did not provide for any type of retirement benefits for Nesmith, or for his receipt of credit for additional employer contributions toward future retirement.- It is undisputed that neither the City nor Nesmith intended for Nesmith to receive employee benefits not specified in the contract.
Pursuant to § 36-27-16(e)(l), Code 1975, ERS suspends a retiree’s benefits when the retiree “returns to active service” with the state or an entity participating in ERS. Pri- or to execution of the contract, inquiry was made as to whether Nesmith’s employment would constitute a return to active service, thereby suspending his receipt of state retirement benefits that he was then drawing.
Upon review of the contract, the administrative staff of ERS advised the City that Nesmith’s employment with the City would, in fact, constitute a “return to active service” under § 36-27-16(e)(l). ERS notified Nes-mith of its intent to suspend his retirement benefits while he was so employed. Thereupon, Nesmith did not accept the job with the City; however, he appealed the decision of ERS’s administrative staff to the Board of Control, which affirmed the staffs decision.
Thereafter, Nesmith initiated a declaratory judgment action against ERS, ERS secretary-treasurer David G. Bronner, and the Board of Control, seeking, inter alia, an order reversing the decision of the Board of Control and allowing Nesmith to contract with the City without suspension of his state retirement benefits.
The case was submitted to the Circuit Court of Montgomery County upon the pleadings, a joint stipulation of facts, and various exhibits. Following oral argument by counsel for the parties, the trial court found in Nesmith’s favor. The trial court held, in essence, that § 36-27-16(e)(l) did not provide for the suspension of benefits when a state retiree is reemployed with an entity participating in ERS but does not accrue additional retirement benefits under the terms of such employment; that it is not within the Board of Control’s authority to suspend retirement benefits in such circumstances; that Nesmith’s performance of the employment contract with the City would not constitute a “return to active service” within the meaning of the applicable law; and that the suspension of Nesmith’s retirement benefits would be arbitrary and capricious under *941 the facts presented. Bronner, ERS, and its Board of Control (hereinafter, ERS) appeal to this court.

I

ERS first argues that, because Nesmith declined to accept employment with the City and the investigator’s position was subsequently filled, there is no justiciable controversy between Nesmith and ERS to sustain a declaratory judgment action. ERS asks this court to reverse and render for that reason.
We find no merit in this argument. The remedial purposes of the Declaratory Judgment Act and the mandate for its liberal construction and application, § 6-6-221, Code 1975, would be frustrated by a finding that there is no controversy in this case. The controversy was not rendered moot when Nesmith chose to continue to receive his retirement benefits and to forgo the compensation available to him under the employment contract, rather than to accept the position with the City and to forgo his retirement benefits. In either case, Nesmith stood to lose a substantial monetary advantage to which he claimed entitlement. ERS continues to maintain that Nesmith would not be entitled to receive retirement benefits while working under the terms of the contract with the City, seeking in this appeal a reversal of the trial court’s holding that ERS had misconstrued the controlling law. ERS has acted and threatens again to act, and the controversy regarding the lawfulness of those actions survives.

II

ERS contends that the Board of Control’s interpretation of § 36-27-16(e)(1), Code 1975, furthers the intent of the legislature and is a proper exercise of the Board’s statutorily granted authority.
Section 36 — 27—16(e)(1) provides in pertinent part as follows:
“EFFECT OF RETURN TO ACTIVE SERVICE. — Should any beneficiary be restored to active service from service retirement ..., his retirement allowance shall be suspended until he again withdraws from service....”
ERS has administratively defined “restored to active service” in Rule 800-2-1-.09, ERS Administrative Rules. That rule provides, in part, as follows:
“A person will be considered to have returned to service within the provisions of Code of Ala.1975, § 36-27-16(e), requiring suspension of benefits if such person has begun employment with the state or a unit participating in the Employees’ Retirement System under Code of Ala.1975, § 36-27-6, in any position whether or not such position is a covered position, except that a person who is elected by the public to serve in an elective office with the state or a political subdivision of the state, which office is not covered, shall not be considered to have returned to service_”
Assessing the legitimacy of Rule 800-2-1-.09, the trial court stated:
“For the Retirement System to apply the provisions of § 36-27-16(e)(1) to reemployed State retirees who are not receiving any retirement benefits in their new employment is beyond the scope of the legislative directive as set forth in § 36-27-16(e)(1). The Court finds that such an expansion of the legislative act, in fact, constitutes legislation by administrative fiat.”
With respect to § 36-27-16(e)(1) and its application to the facts of Nesmith’s case, the trial court found, in part, as follows:
“The Court determines this language to mean that retirement benefits are to be suspended when the retired employee returns to active service within the purview of the Retirement Act itself and when the retired employee receives credit for additional■ employer contributions toward additional future retirement. This court cannot find a rational basis for the denial of retirement benefits to the Plaintiff in this case because of his contract with the City of Cullman. Mr. Nesmith was not going to receive any retirement benefits whatsoever from the City of Cullman by employer contribution or otherwise.
“The Court cannot find a rational basis for treating this Plaintiff differently from *942 retired State employees who Defendants permit to receive full retirement benefits when they go to work for governmental agencies or ‘units’ outside the Retirement System or for private employers. The denial or suspension of benefits to Mr. Nes-mith under the facts and circumstances of this case would be arbitrary and capricious.”
(Emphasis in trial court order.)
We adopt the above quoted parts of the trial court’s order as part of this court’s opinion.
Although the legislature delegated to ERS’s Board of Control the ability to establish rules and regulations for the administration of funds in ERS, § 36-27-23(g), Code 1975, the Board of Control is not empowered to draw distinctions between retired employees, when those distinctions have no rational basis. Moreover, the legislature cannot delegate its legislative power merely by granting rulemaking authority to an administrative body. Wallace v. Board of Education of Montgomery County, 280 Ala. 635, 197 So.2d 428 (1967). In interpreting a statutory provision, this court must look to the context, spirit, and the whole, in order to reach the true intent of the legislature. Hawley Fuel Corp. v. Burgess Mining & Constr. Corp., 291 Ala. 546, 283 So.2d 603 (1973).
ERS maintains that the intent of, and its interpretation of, § 36-27-16(e)(1) are meant to prevent retirees from drawing retirement benefits from ERS while also receiving a salary from the “public coffers” within the state, a situation they define as “double dipping.” We disagree. We find the legislative intent of § 36-27-16(e)(1) to be to prevent a retiree from receiving retirement benefits from ERS—with an obvious impact upon ERS—and at the same time, securing other employment that would again impact ERS by that retiree’s acquiring additional retirement benefits in the future. This circumstance was not present in the case of Nesmith’s contract with the City, as he would not have acquired any additional retirement benefits.
Nesmith would be in the same position as a retired employee who works for and is paid with public funds by a governmental entity not participating in ERS under § 36-27-6. ERS permits such retired employees to continue receiving retirement benefits. In fact, it is undisputed that Nesmith could serve as sheriff of Cullman County, be paid with public funds, and continue to draw his retirement benefits from ERS. Also, the City could have contracted with a retired state trooper or state employee from any other state in the United States to do the same job Nesmith was attempting to do and not participate that retired employee in ERS. Surely, the legislature did not intend for ERS to discriminate against Alabama state retirees who seek further employment within the state in favor of out-of-state retirees who seek employment within Alabama.
ERS also contends that in interpreting § 36-27-16(e)(1), it provides a disincentive to retire as a proper exercise of its fiduciary duty to maintain the retirement fund. However, ERS also owes a fiduciary duty to all employees who have contributed to ERS, who have earned their retirement benefits, who are eligible to retire, and who elect to retire. By creating disincentives to retirement, ERS fails to fulfill its fiduciary duty to the participating employees who become eligible for retirement.
We realize that the best scenario for ERS would be for an employee not to retire after becoming eligible; however, our legislature has provided that a member of ERS may retire upon reaching eligibility and receive retirement benefits unless the member is restored to active service. If the legislature wishes to further restrict the receipt of retirement benefits from ERS by an eligible member, that is the duty of the legislature. It is not the judiciary’s function to usurp the role of the legislature by judicial legislation. Employees’ Retirement System of Alabama v. Head, 369 So.2d 1227 (Ala.1979).
We agree with the trial court’s ruling that suspension of Nesmith’s retirement benefits would be arbitrary and capricious. We further agree that Nesmith’s performance of the employment contract with the City would not constitute being “restored to active service ” *943 within the meaning of § 36-27-16(e)(1) and that it is not within the Board of Control’s authority to suspend retirement benefits in such circumstances.
We hold that if an eligible employee within the ERS elects to retire, and if the retiree’s future employment does not impact ERS by the acquiring of additional retirement benefits, then the retiree has not been restored to active service and ERS is without authority to deny or suspend that retiree’s retirement benefits.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
THIGPEN and YATES, JJ., concur.