We granted this petition for the writ of certiorari to allow the Court to address the question whether § 36-27-16(e)(1), Ala. Code 1975, requires suspension of retirement benefits upon a State retiree's reemployment with the State or with a county, city, or other governmental unit participating in the Employees' Retirement System ("ERS"); or whether suspension of retirement benefits is required only upon such reemployment when additional retirement credit is accrued.
Johnny B. Nesmith, a retired state trooper, sought to contract with the City of Cullman to work for one year as an investigator with its drug unit. The ERS administrative staff ruled that his employment with the city, a participant in the ERS, constituted restoration to "active service" as that term is used in Ala. Code 1975, § 36-27-16(e)(1), and, therefore, that the statute mandated suspension of his benefits. Nesmith appealed the ERS's ruling to the Board of Control, the agency authorized in § 36-27-23 to administer the ERS. The Board of Control affirmed the ERS's administrative ruling.
Nesmith then filed a declaratory judgment action in the Circuit Court of Montgomery County, seeking an order reversing the order of the Board of Control and allowing him to contract with the City of Cullman without suspension of his State retirement benefits. In his complaint, Nesmith contended that the ERS Board of Control's interpretation of the return-to-service provision of § 36-27-16(e)(1), and the Employees' Retirement System Administrative Rule 800-2-1-.09, effectively denied him, and other retired state employees similarly situated, a right to contract, guaranteed under the Constitutions of the State of Alabama and of the United States, thus unfairly discriminating against him in denying him the right to pursue a lawful occupation as guaranteed by the Constitution of the State of Alabama. Nesmith argued that the ERS Board of Control's interpretation of the statute and Rule was unconstitutional and that its ruling was arbitrary and capricious.
The trial court held that Administrative Rule 800-2-1-.09 was invalid to the extent that it requires the suspension of benefits when a state retiree is reemployed with an entity participating in the ERS but does not accrue additional retirement benefits under the terms of such employment; that the application of the Rule to suspend Nesmith's retirement benefits was arbitrary and capricious under the facts of the case; and that the Board of Control had misinterpreted §36-27-16(e)(1) and had misapplied it to Nesmith in ruling that his contract with the City of Cullman constituted his being "restored to active service." The ERS appealed the trial court's judgment to the Court of Civil Appeals.
The Court of Civil Appeals held the legislative intent of § 36-27-16(e)(1) to be "to prevent *Page 945 
a retiree from receiving retirement benefits from ERS — with an obvious impact upon ERS — and, at the same time, securing other employment that would again impact ERS by that retiree's acquiring additional retirement benefits in the future." Employees' Retirement System of Alabama v.Nesmith, 644 So.2d 938, 942 (Ala.Civ.App. 1993). The Court of Civil Appeals found that this circumstance was not present in Nesmith's case, because he would not have acquired any additional retirement benefits; that court held: "[I]f an eligible employee within the ERS elects to retire, and if the retiree's future employment does not impact ERS by the acquiring of additional retirement benefits, then the retiree has not been restored to active service and ERS is without authority to deny or suspend that retiree's retirement benefits." 644 So.2d at 943.
The Employees' Retirement System was created by Act No. 515, Ala. Acts 1945. The original act required suspension of benefits if a retiree returned to work and earned a salary equal to or greater than his average final compensation upon retirement. The original act was amended by Act No. 79, Ala. Acts 1953, to require suspension of benefits when a retiree is reemployed by a state entity participating in the ERS. This requirement is codified as § 36-27-16(e)(1), and it provides as follows:
 "§ 36-27-16(e)(1) EFFECT OF RETURN TO ACTIVE SERVICE. — Should any beneficiary be restored to active service from service retirement or from disability retirement on or after attainment of age 52, his retirement allowance shall be suspended until he again withdraws from service and he shall not again become a member of the retirement system nor shall he make contributions; except, that should such beneficiary who has been restored to active service continue in service for a period of two or more years from the date of his reentry into active service, he may request the board of control to allow him to again become a member of the retirement system. . . ."
The term "active service" is not defined in the statute, but § 36-27-1(7) defines "service" as "[s]ervice as an employee paid for by an employer." "Employer" is defined in §36-27-1(3) to be the state or the agency or local governmental unit by which the "employee" is paid. The term "employee" is defined in § 36-27-1(2) and § 36-27-6 to include both state employees and employees of counties, cities, and other public entities. Based upon these definitions in the ERS statutes, we conclude that the term "restored to active service" is sufficiently broad to include employment with any employer that participates in the ERS. In applying the clear meaning of the statute, courts must look at the entire statutory scheme rather than at isolated phrases or clauses.Alabama Farm Bureau Mutual Casualty Insurance Co. v. Cityof Hartselle, 460 So.2d 1219 (Ala. 1984), cited inBronner v. Gatewood, 512 So.2d 102, at 107 (Ala.Civ.App. 1986), aff'd, Ex parte Gatewood, 512 So.2d 107
(Ala. 1987).
The "Retirement Systems of Alabama" include both the ERS and the Teachers' Retirement System ("TRS"). The ERS and the TRS are managed and administered by separate boards of control (§§ 36-27-2, 16-25-19), but Dr. David Bronner serves as secretary-treasurer for both systems. See Edmonds v.Bronner, 547 So.2d 1172, 1173 (Ala. 1989). The ERS and the TRS are interlocking systems, and provision is made in the statutes creating each system for the transfer of service credit between the systems. § 16-25-4 and § 36-27-12, Ala. Code 1975. The TRS statutes contain a return-to-service provision, § 16-25-14(i)(1), that is essentially identical to § 36-27-16(e)(1), the return-to-service provision of the ERS; both require suspension of benefits if a retiree is restored to active service.
The Alabama legislature amended the TRS statutes in 1973 to allow teachers to return to work under certain conditions without suspension of benefits. This provision is now codified in § 16-25-26. The statute provides that a retired teacher may return to active service, provided that he or she is not employed in a full-time capacity, does not replace a full-time teacher, and does not earn in excess of the base allowed under federal Social Security law. *Page 946 
In 1979, the ERS Board of Control adopted Administrative Rule800-2-1-.09, which creates exceptions to the suspension-of-benefits provision of the statutes in situations in which
 "[a] person . . . is elected by the public to serve in an elective office with the State or a political subdivision of the State, which office is not covered . . . [or] such person is employed on a part-time basis, does not replace a full-time employee, and receives compensation equal to or less than the base allowed under Federal Social Security."
The trial court and the Court of Civil Appeals construed and defined the restored-to-active-service provisions of §36-27-16(e)(1) as applying only in circumstances in which a state retirement beneficiary returns to employment andreceives credit for additional employer contributions towardfuture retirement.
We cannot agree, because the plain language of the statute belies this interpretation and leaves no room for judicial construction such as that engaged in by the trial court and the Court of Civil Appeals. We must hold that the plain meaning of the words of the statute control.
It is settled law in Alabama that:
 "The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."
IMED Corp. v. Systems Engineering Associates Corp.,602 So.2d 344, 346 (Ala. 1992), citing Tuscaloosa CountyComm'n v. Deputy Sheriffs' Ass'n of Tuscaloosa County,589 So.2d 687 (Ala. 1991). See 3 Sutherland StatutoryConstruction, (4th ed. 1992), p. 681, quoting R. Randall Kelso, "Use of the Plain Meaning Rule to Provide a Structure for Discovering Legislative Intent," 33 Hastings L.J. 187 (1981).
There is no lack of clarity and no ambiguity in the language of § 36-27-16(e)(1); that statute states plainly: "Should any beneficiary be restored to active service from service retirement or from disability retirement on or after attainment of age 52, his retirement allowance shall be suspended
until he again withdraws from service and he shall not again become a member of the retirement system nor shall he make contributions. . . ." (Emphasis added.) When the language of a statute is clear and unambiguous, there is no room for construction, and a clearly expressed intent must be given effect. Employees' Retirement System of Alabama v.Head, 369 So.2d 1227, 1228 (Ala. 1979), citing Bagleyv. City of Mobile, 352 So.2d 1115 (Ala. 1977); Tillmanv. Sibbles, 341 So.2d 686 (Ala. 1977); Bronner v.Gatewood, supra, at 105, citing East Montgomery Water,Sewer Fire Protection Authority v. Water Works SanitarySewer Board, 474 So.2d 1088 (Ala. 1985).
An actuary for the ERS, Donald M. Overholser, testified by deposition that allowing retirees to return to work without suspension of benefits would constitute an incentive for employees to retire as soon as they could and draw full benefits and that such early retirements would have a negative impact on the retirement system. He stated:
 "The effect on the retirement system of people retiring early is to increase the cost to the retirement system. The benefits are payable longer, and there's not as much time to accumulate the money to pay them. And those factors outweigh the value of any additional accruals."
Thus, a rational purpose for the differing treatment of retired state employees is found in assuring the fiscal soundness of the Retirement Systems of Alabama.
Furthermore, we know that the Alabama legislature interprets § 36-27-16(e)(1) as acting to suspend benefits. The evidence is the legislature's enactment of the 1973 amendment to the TRS statutes, discussed above and codified as §16-25-26. Otherwise, there would have been no need for the legislature to amend the TRS statute to create an *Page 947 
exception to the return-to-service statute so as to allow a return to service without a suspension of benefits.
The Board of Control of the TRS had the same rule-making authority that the ERS had before the legislature enacted §16-25-26 in 1973. However, the TRS Board of Control did not attempt to enact exceptions. The exceptions to the TRS were enacted by the Alabama legislature. The ERS Board of Control created by its own rule-making procedure what the legislature had provided for the TRS. We agree with the trial court and the Court of Civil Appeals that for the ERS Board of Control to promulgate exceptions to § 36-27-16(e)(1), in the ERS statute, without enabling legislation from the legislature, is an unlawful attempt to legislate. Wallacev. Board of Education of Montgomery County, 280 Ala. 635,641, 197 So.2d 428 (1967). As stated in Norton v.Lusk, 248 Ala. 110, 122, 26 So.2d 849 (1946), the legislature does not delegate its legislative powers merely by granting rule-making authority to a body such as the Board of Control of the ERS.
For the reasons stated above, the trial court and the Court of Civil Appeals erred in holding that § 36-27-16(e)(1) does not provide for the suspension of retirement benefits when a state retiree is restored to active service with an employer that participates in the ERS if the state retiree will not accrue additional retirement benefits under the terms of such employment. We are obligated to apply the plain meaning of the statute. Nesmith is over the age of 52, and his performance of an employment contract with the City of Cullman would constitute being "restored to active service" within the meaning of § 36-27-26(e)(1), and, thus, his benefits were due to be suspended. However, we agree with the trial court and the Court of Civil Appeals that the ERS Board of Control was without the power to promulgate exceptions to the statute by adopting its Administrative Rule 800-2-1-.09. Any change in the interpretation of the statute must be left to the legislature.Tatum v. Schering Corp., 523 So.2d 1042 at 1044-45 (Ala. 1988); Black Belt Wood Co. v. Sessions,514 So.2d 1249, 1263 (Ala. 1986).
The judgment of the Court of Civil Appeals is due to be reversed and the case remanded to that court with instructions to remand to the circuit court for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, HOUSTON, STEAGALL, INGRAM and COOK, JJ., concur.