MURDOCK, Justice (dissenting).
I respectfully dissent. I cannot conclude that a corporate employer's claim for indemnity from its employee for financial losses suffered by the employer when it was held vicariously liable for its employee's breach of duty to a third party is itself an action under the Alabama Medical Liability Act, § 6-5-480 et seq. and § 6-5-540 et seq., Ala. Code 1975 ("the AMLA"). If it is not a claim under the AMLA, then the provisions of § 6-5-482, Ala. Code 1975, regarding the running of the statute of limitations are inapplicable.
An AMLA action, by definition, entails a claim by a patient against a medical provider for alleged lack of care in providing medical services to the patient, with a resulting "medical injury" to the patient. Here, Benchmark Insurance Company stands "in the shoes" of Joseph L. McNamara, Jr.'s employer, Southern Medical, Inc. ("SMI"), pursuant to its subrogation rights, to sue McNamara for losses suffered by SMI when SMI settled an action alleging that it was vicariously liable for McNamara's breach of his duty of care as a pharmacist to a patient. It sues McNamara, then, not in McNamara's capacity as the plaintiff's medical provider, but as the plaintiff's employee. SMI was not a patient of McNamara's; it is a corporation. It did not receive medical services from the medical provider it now sues, and it did not suffer a "medical injury." If Alabama recognizes the noncontractual cause of action for indemnity by an employer against its employee in this case, perhaps as a common-law claim of some sort (something that no party to this action challenges), it is not an AMLA claim.[7]
I recognize that § 6-5-482 references § 6-2-6, Ala. Code 1975, which governs indemnity claims generally. But nowhere does § 6-5-482, much less § 6-2-6, say *226 that a corporate employer has a claim under the AMLA for medical malpractice. Although § 6-2-6 is referenced, it is referenced as part of a long list of statutes in which the legislature appears to have gathered up all conceivably germane limitations-related provisions of Title 6, Chapter 2. Although a tenet of statutory construction is that we give each word or phrase in a statute meaning "if possible," we ask far too much of this brief reference in this circumstance.[8] Our search for a field of operation for a reference such as this buried in a litany of what appears to be all the limitations provisions that could potentially be applicable to a medical-malpractice dispute, cannot justify the implicit conclusion reached today: that the legislature intended by this briefest of references to modify the fundamental nature of an AMLA action and create a new cause of action by which an employer qua employer-a corporation no less-can sue for medical malpractice when it has not suffered any medical injuries by a physician or other provider as a result of negligent provision of medical care to that employer. To me, to accept that such a reference does this represents a classic case of "the tail wagging the dog."

Entirely collateral to what I would consider to be the axiomatic premises stated above for this conclusion, I note the impracticalities-impossibilities, really-the contrary view creates. Foremost among them is the scenario in this very case, which Justice Shaw aptly describes as follows: "Under the facts of this case, the statute of limitations expired under § 6-5-482(b)[, Ala. Code 1975,] before the limitations period under § 6-2-6[, Ala. Code 1975,] began to run." 261 So.3d at 224 (Shaw, J., concurring in the result).

See, e.g., Michael v. Beasley, 583 So.2d 245, 249 (Ala. 1991) ("The general rule of statutory construction is that effect should be given, if possible, to each word and each section of the statute being construed." (emphasis added)). But see Ex parte Employees' Ret. Sys. of Alabama, 644 So.2d 943 (Ala. 1994) (noting that, in applying the clear meaning of a statute, a court must look at the entire statutory scheme rather than at isolated phrases or clauses).